*93 N. J. Eq.*              Doremus *v.* Paterson.

HENRY W. DOREMUS et al.

*v.*

THE CITY OF PATERSON.

[Decided July 29th, 1921.]

An application by a riparian owner for an order fixing damages for decrease in rental value and arrested development on account of the pollution of a stream on the claim that conditions had changed since a decree was entered refusing an injunction and providing for payments to riparian owners at stated times while the pollution continued, must be denied where there is no showing of change of conditions since the decree.

On application under a decree.

*Mr. Garret Van Cleve,* for Louis C. Randall, executor of Scotto C. Nash.

*Mr. Francis Scott,* for the city of Paterson.

LEWIS, V. C.

This is an application under a decree of this court to fix the percentage of rental loss and for arrested development in the matter of the estate of Scotto C. Nash. The case of Doremus against the city of Paterson was heard by the late Vice-Chancellor Stevens, and in the decree advised by him he made provision for these payments at stated times to the riparian owners as long as the pollution should exist. The amount involved, as far as the Nash claim is concerned, is in the neighborhood of $1,476. The final opinion in this lengthy litigation was filed by Vice-Chancellor Stevens in 1913 and was affirmed by the court of errors and appeals. The case had been before him on several previous occasions. *63 N. J. Eq. 606; 65 N. J. Eq. 711; 69 N. J. Eq. 175; 70 N. J. Eq. 296; 73 N. J. Eq. 476.* His views at this time

were based upon the promise of the defendant that the pollution of the Passaic river would cease in the year 1916. In consequence of this promise, no injunctive order was issued against the defendant. The pollution still continues, owing, it is asserted, to the non-completion of the trunk sewer. Since 1916, and every two years thereafter, the defendant has adjusted its damages with the various riparian owners, and on application before me by the solicitors representing all the riparian owners, except the Nash estate, a decree consented to by the solicitor of the city was entered.

Application was then made to take testimony under the decree to ascertain whether there had been any change in conditions as to the Nash estate since the making of the last decree by Vice-Chancellor Stevens. It was urged, on behalf of the defendant, that the matter could be taken up under the decree in this informal way. I am rather of the opinion that to deal with this subject, which is of such importance, that the better procedure would be by a supplemental bill. However, upon the consent of both parties, a hearing took place at which several witnesses were sworn. From a consideration of the testimony of these witnesses it does not appear that there has been any material change in the conditions, since the taking of the testimony before the late Vice-Chancellor Stevens, certainly not since the making of the last decree by the vice-chancellor in 1919. The evidence of the principal witness for the city is, in a large measure, the same as given by him at the hearing before Vice-Chancellor Stevens, particularly as to the value and condition of the Nash property. I am not satisfied to conclude that the arrested development is caused by the acts of the Nash owners, and I do not think that I should at this time change the calculation which Vice-Chancellor Stevens made with so much care and skill and at such labor. His table of the annual or rental values of the various properties is found in 78 N. J. Eq. 506. There may be changes which may affect future awards, but I do not feel that I can now change the decree made by him. His views and method of calculation have received the approval of our court of errors and appeals.